### The Town of Chester *vs.* The Connecticut Valley Railroad Company.

Under the statute of 1866, (Acts of 1866, Chap. 67,) the general railroad commissioners have power to discontinue any railroad station, however the same may have been established.

The commissioners have no powers of arbitration.   Their acts are judicial, and their determinations must be definite and not dependent upon conditions to be performed by parties over whom they have no control.

The commissioners, upon the application of a railroad company for the discontinuance of one of two stations within the town of *C*, made an order that the station should be discontinued upon a certain private road which had been made to the other station being conveyed by the owner of the land uncondi-

tionally to the town of *C*, and upon the railroad company paying $250 to the town to be expended in certain highway improvements. Held that the order was one that the commissioners had no power to make.

The conditions could not be regarded as merely nugatory, and the order in other respects good, it appearing from the order itself that the commissioners would not have made the order but for the conditions.

The railroad company, having performed one of the conditions and procured the performance of the other, applied to the commissioners for an absolute order for the discontinuance of the station, and the commissioners, after notice and a hearing, made an order, supplemental to the original order, finding that its conditions had been complied with and directing unconditionally the discontinuance of the station. Held that this order, being supplemental to and founded upon the original void order, was itself of no effect.

The town of *C* brought a petition for an injunction against a discontinuance of the station by the railroad company. Held that, as the town would have the burden of maintaining the highway required by one of the conditions, it had a sufficient interest to enable it to maintain the suit.

PETITION for an injunction against the abandonment of a railroad station by the respondents; brought to the Superior Court in Middlesex County. A temporary injunction was issued, and the respondents applied for a dissolution of it, and upon the hearing upon this motion it was agreed by the parties that the facts might be found and the case in all respects treated as if it were a hearing upon the principal petition. The following facts were found.

There are two stations upon the railroad of the respondents, within the town of Chester, one known as the Chester Station and the other as the South Chester Station, which are only one hundred and sixty rods apart. The former is the one which the respondents are proposing to discontinue.

A very large majority of the citizens and business men of the town have been from the first, and now are, in favor of making Chester Station the station for the town, and their business with the railroad is mostly done at that station. The respondents originally located their station at South Chester, but upon the hearing of a petition of many of the citizens of the town, had before the railroad commissioners and an engineer under the statute, the location was by their order changed to what is now known as the Chester Station. The respondents have stoppped their trains at both stations, but only one is needed for the public accommodation.

The town is the owner of one hundred and sixty-seven shares of the stock of the railroad company, and. the same was subscribed, and such subscriptions procured to be validated of a supposed informality, on the expectation that the station would be located where a majority of the citizens of the town desired, and the confident opinion that it would be so located was on several occasions expressed to them by the president and engineer of the company. Such expression of opinion was made in good faith and with no intention to deceive, but in fact went far to quiet the apprehensions of those concerned and induce them to favor a subscription by the town to the stock of the company. The president and engineer were both members of the board of directors, and as such had a voice and vote in locating the station, but a large majority of the board considered the location at what is now called South Chester as the most advantageous and best. Before the first location of the station the grade of the road bed at the Chester station was about twenty-six feet to the mile, which was increased by raising the road bed at and near that point six or seven feet. This change was made to save the time and expense which would have been necessary to make a deeper excavation through rock, and to facilitate the transportation of the iron for the road, and not to affect the question of the location of the station at that point. The cost of making a proper grade at the place would then probably have been less than one thousand dollars. The grade at the South Chester station is now much more favorable for stopping and starting trains than at the Chester station, and the expense of now sufficiently and properly reducing the grade and making the necessary changes to conform to such altered grade at the Chester station would be very considerable. The expense to the respondents of maintaining each of the stations is about $2,000 a year, and the average detention occasioned by each stopping of a train is four minutes. The distance from the Chester station to a central point in the village of Chester is four hundred rods. The distance from the South Chester station to the same point by a highway in part new is three hundred and seven-

ty-nine rods, and by the old highway about three hundred and fifty rods. There is an altitude of eighty-five feet to overcome by the old highway, which is mostly in two hills of about equal height and difficulty, one of which is avoided by the new highway. The road to the Chester station is nearly level, but somewhat sandy, and in times of high freshets overflowed in places, but not often to a very inconvenient depth. The Chester station was located on the highway leading from the village to the steamboat landing on Connecticut River, at which at that time the steamboats between Hartford and New York made daily landings for passengers and freight, and also a steamboat running from Hartford to Sag Harbor and Greenport by way of New London, but for the last two or three years none of those boats have stopped at that landing, and it has been only used by a smaller boat plying daily between Hartford and Saybrook, but connecting on its downward trips with the New York boats at Saybrook.

In March, 1874, the respondents voted to discontinue their station at Chester, and after a full hearing before the railroad commissioners on an application for their approval of such discontinuance, an order was, on the 18th day of May, 1874, made by a majority of the commissioners, approving and authorizing the discontinuance of the station. The material part of the order was as follows :—

" After a full and extended hearing of all the appearing parties, with their evidence and arguments, and after a thorough examination of the approaches and surroundings of said depot, the railroad commissioners do find and approve of the intentions of said Connecticut Valley Railroad Company as set forth in the foregoing application, and do hereby order that the said Connecticut Valley Railroad Company may discontinue and abandon said depot in the town of Chester north of Chester Cove, for the following reasons, and upon complying with the conditions herein after set forth. *Reasons :* First, there is located at South Chester, and within a half mile, another depot of ample and sufficient accommodations for all the business in that locality. Second, the business

interests do not need and will not warrant the maintenance of two depots so situated, and it is believed that when the following conditions are fully carried out and complied with, (upon which conditions the foregoing approval is given,) the depot at South Chester will accommodate the whole public as well or better than the one in question. *Conditions :* The new highway as laid and opened for public travel by Capt. C. O. Clark between the South Chester depot and the top of school house hill so called, to be legally, unconditionally and without expense conveyed to said town of Chester ; also the Connecticut Valley Railroad Company shall deposit with the treasurer of said town of Chester the sum of two hundred and fifty dollars, to be expended under the direction of the selectmen of said town in grading and improving School-house Hill, and for no other purpose, such conveyance and such deposit of said sum of money to be considered a full performance of the foregoing conditions without action on the part of said town. Dated at Hartford, this 18th day of May, 1874.

CHARLES W. SCOTT, ) Railroad
GEO. W. ARNOLD, ) Commissioners."

The conditions prescribed by the commissioners were immediately complied with by the respondents and by the several persons interested in the new highway referred to and in the land over which the same was constructed, but the town refused to accept either the money or deed. The money was left at the residence of the clerk and treasurer of the town in his absence, and before the service of the injunction. He did not see it until after the injunction was served, and did not intend to accept it, and soon afterwards returned it to one of the attorneys for the respondents. He knew it was to be tendered and was requested to be ready to receive it, but did not intend either to receive it or to be present for that purpose. It was tendered to and left with his wife in a room in his house where the records of the town were kept and town business transacted, but the books of the treasurer were kept at his store.

On the 15th day of June, 1874, subsequently to the hear-

ing on the respondents' motion to dissolve the temporary injunction, and subsequently to the tender of performance by the respondents and others of the conditions upon which the approval of the railroad commissioners was given, the respondents made an application to the commissioners, asking for a supplemental order and an absolute approval of their discontinuance of the station, upon which application, after notice and a hearing, the following order was passed by a majority of the commissioners :—

" Upon the foregoing application of the Connecticut Valley Railroad Company to the Railroad Commissioners, representing and showing that they have fully complied with all the conditions contained in a former decree and order of this board, bearing date May 18th, 1874, and having reference to the abandonment and discontinuance of a station upon the line of said railroad in the town of Chester and known as Chester Station ; and said Connecticut Valley Railroad Company having furnished proof to the satisfaction of this Board that they had done all that was required of them by said former decree and order, within its full intent and meaning : it is hereby further ordered and decreed, as supplemental to said former decree and order, that said Connecticut Valley Railroad Company may, on and after this date, abandon and discontinue said Chester Station."

The respondents afterwards made a motion to the judge who granted the temporary injunction for the dissolution of the same, in pursuance of which motion a hearing of the parties was had, and it was agreed between the parties that the proceeding should be considered as· being had in court, and as in and of the term to which the petition for an injunction was made returnable and was returned.

The petitioners claim that the location of the station in the first instance by the railroad commissioners and engineer was final, and that the commissioners have now no jurisdiction over the subject matter ; and that, if they have jurisdiction, the condition which they attached to their first approval of the discontinuance of the station rendered such approval illegal and void ; and that having once entertained jurisdiction

and heard the parties and rendered a decision in the cause, they were, as to the last hearing and order, *functi officio*, and their proceedings in connection therewith of no validity.

Upon these facts the case was reserved for the advice of this court.

*Culver* and *Warner*, with whom was *J. T. Clarke*, for the petitioners.

*H. H. Barbour* and *Chadwick*, for the respondents.

PARDEE, J.   Sections 496 to 499 inclusive, on pages 192 and 193 of the Revision of 1866, enacted in 1865, point out the mode of fixing the location in certain cases of stations upon the line of any unfinished railroad, and declare that, when thus fixed, the railroad company shall thereafter maintain the same at such place.   Chapter 67, page 38, of the session laws of 1866, provides that "no railroad corporation shall abandon any depot or station which is on its road, and in this state, after the same has been established for twelve months, except by the approval of the general railroad commissioners, given after a public hearing."

Of course, the adjustment of railroad stations to the centers of business and population in the various towns cannot be made once for all time.   All of those centers are liable to change.   No degree of formality in the establishment of the location of a station can prevent it; and the obvious office of the act of 1866 is to provide a method for the re-adjustment of the proper relation of the stations to those centers wherever it has been disturbed.   Its language is general; it has no reservation or exception in terms; and we find no occasion for making one upon inference.   We think that the legislature intended to bring all stations within its scope, without regard to the manner of their establishment; that, if the expression in the act of 1865, "and shall thereafter maintain the same at such place," imports perpetuity, the same is restricted by the comprehensive terms of the act of 1866; and that the matter of the abandonment of one of its stations

in Chester by the respondent corporation, was within the jurisdiction of the railroad commissioners.

The act proceeds upon the idea that the abandonment by a railroad corporation of a station, is a matter in which the people using it and the corporation have antagonistic interests, and that controversies will arise ; and the railroad commissioners are made a special tribunal for the settlement thereof.

This tribunal exists by force of the statute; it is not the creation of the parties ; therefore it has not the power of an arbitrator, defined and limited only by the agreement of individuals.   Its duties in this respect are judicial in character.   A well defined issue is presented for its determination, not indeed by any process of pleading but by the statute itself, speaking for the contending parties.    That issue is this :— Shall the railroad corporation be allowed to abandon a certain station ?   Upon this question it is to hear testimony after due notice; upon this testimony it is to render judgment; and this, like all other judicial judgments, should be definite, positive and without conditions.

The judgment in this case lacks these essential characteristics.   It is made conditional, first, upon the performance of an act by a person over whom the tribunal has no control, who is not a party to the proceeding, and has not been heard upon the question determined ; and, secondly, upon an expenditure of money by the railroad corporation, which it has no power to make.   It is powerless as a judgment; neither party can enforce it ; it is merely advice.

We know of no tribunal created by statute for the adjudication of questions between parties litigant, which is authorized to deprive either of them of the benefit of the judgment to which he is entitled by the proven facts, by annexing thereto conditions of this character ; and we have looked in vain in the law which gives to the railroad commissioners jurisdiction over a certain class of questions, for any language indicative of an intention on the part of the legislature to give them powers so greatly transcending those granted to any other tribunal.

We are asked by the respondents to treat the conditional part of the judgment as nugatory and allow the remainder to stand as perfect. This we cannot do. The commissioners say, expressly, that upon these conditions their approval is given. This means, of course, that they would not have given unconditional permission to the railroad corporation to abandon the station. Their belief in the absolute necessity for conditions, and in their power to incorporate them in their judgment, determined their action. Thus, the illegal conditions controlled and gave form to the judgment; the error inheres in every part; and no correction less thorough and radical than setting aside the judgment will reach that error and its effects.

The supplemental judgment of the commissioners, so far from correcting the error, re-affirms and continues it. It is by special reference made to rest upon the former judgment and the conditions which destroyed that judgment. It contains language which prevents us from considering it as an independent and perfect work in and of itself; and so, when the first judgment falls, it carries with it all that is supplemental to it.

We think that the town of Chester has a standing in court, in view of the fact that the law will cast upon it the continuing burden of maintaining the highway named in the first condition embodied in the judgment of the railroad commissioners.

We advise the Superior Court to make the injunction perpetual.

In this opinion the other judges concurred.