SELDEN W. SPENCER'S APPEAL FROM RAILROAD COMMISSIONERS.

ELLEN P. STOUGHTON'S APPEAL FROM RAILROAD COMMISSIONERS.

*Third Judicial District, New Haven, June Term, 1905.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The provision of General Statutes, § 3718, which requires that the decision of the railroad commissioners upon any matter relating to the removal of grade-crossings shall be communicated to the parties within twenty days after the final hearing, is directory only, not mandatory; and therefore a failure by the railroad commissioners to give such notice does not render their decision void.

Under the Constitution of this State, which confides the powers of government to three separate and distinct departments, the legislative, the executive, and the judicial, the General Assembly cannot authorize the courts to exercise powers which are clearly administrative and not incidental to the discharge of any legitimate judicial function.

What is the best method of eliminating a grade-crossing in a given case is an administrative question pure and simple, which cannot constitutionally be made the subject-matter of judicial determination; and therefore General Statutes, § 3718, which purports to give jurisdiction of that question to the Superior Court, on appeal from the action of the railroad commissioners, is to that extent null and void.

Argued June 14th—decided October 6th, 1905.

---

* Transferred from the first judicial district.

APPEALS from an order of the railroad commissioners abolishing a grade-crossing in the town of East Hartford, taken to and tried by the Superior Court in Hartford County, *George W. Wheeler, J.;* facts found and judgment rendered modifying the plan and order of the railroad commissioners, and appeal by several of the respondents. *Error, and causes remanded for rendition of judgments confirming the order of the railroad commissioners.*

*Charles M. Joslyn*, for the Hartford Street Railway Company.

*William F. Henney*, for Ellen P. Stoughton.

*Theodore M. Maltbie* and *Percy S. Bryant*, for Selden W. Spencer and the Town of East Hartford.

*Edward D. Robbins*, for the New York, N. H. & H. R. Company and the New England R. Company.

PRENTICE, J. Three lines of tracks of the New York, New Haven and Hartford Railroad Company cross at grade the main highway in the village and town of East Hartford. The Hartford Street Railway operates a line of its road along said highway upon both sides of said crossing, but not over it. In 1903 the street-railway company, acting under legislative authority, was preparing to carry its tracks over said crossing by means of a trestle. The selectmen thereupon presented their petition to the railroad commissioners for the separation of the grades at the crossing. After due notice and hearing the commissioners issued an order requiring such separation, and prescribing the manner thereof and the changes to be made in the crossing and in the approaches thereto. The plan contemplated the carrying of the tracks of the steam road over the highway, and involved both the depression of the highway and the elevation of the railroad roadbed. From this order two property-owners interested took appeals to the Superior Court. These are the cases before us.

One of the appeals specifically assigns as a ground for relief, that the order of the commissioners was illegal because not made in conformity to General Statutes, § 3718. The illegality relied upon was the alleged failure of the commissioners to communicate their decision to the parties within twenty days after the final hearing. Upon the argument, counsel for both the railroad and railway companies contended that, as the consequence of the same claimed state of facts, the Superior Court was without jurisdiction, since the order appealed from was void.

Upon this preliminary question, which confessedly was a proper one for judicial review, the court rightly held—and it matters not whether it did so as a matter of law or of fact—that the commissioners' order was not void, and that the court was not for that reason without jurisdiction. The provision of § 3718, requiring the commissioners to communicate certain of their decisions to the petitioners, and to all persons to whom notice of hearing has been given, within twenty days after the final hearing, is directory and not mandatory. "It is of course difficult to lay down a general rule to determine in all cases when the provisions of a statute are merely directory and when mandatory or imperative, but, of all the rules mentioned, the test most satisfactory and conclusive is, whether the prescribed mode of action is of the essence of the thing to be accomplished, or in other words, whether it relates to matter material or immaterial—to matter of convenience or of substance." *Gallup* v. *Smith*, 59 Conn. 354, 358. See also to the same effect *Colt* v. *Eves*, 12 Conn. 243. In the determination of the question as to whether or not a provision as to the proceedings of a public officer is of the essence of the thing to be accomplished, the cases agree that significance is to be attached to the nature of the act, and also the language and form in which the provision is couched, as, for instance, whether or not it is, on the one hand, affirmative and such as would naturally be chosen to prescribe directions for an orderly and proper dispatch of business, or, on the other, negative or prohibitive, or expressive of a condition prece-

dent, or appropriate to the creation of a limitation of power. *People* v. *Allen*, 6 Wend. (N. Y.) 486; *Pond* v. *Negus*, 3 Mass. 230, 232; *Bladen* v. *Philadelphia*, 60 Pa. St. 464; *Pearse* v. *Morrice*, 2 Ad. & El. 84, 96.

If the subject-matter and language of the present statute be examined in the light of these principles, it will be seen that the provision in question is one which relates to the communication to the parties concerned of the results of a hearing; that the language which expresses it is affirmative in its character and such as would naturally be used to secure the prompt and proper dispatch of public business; that neither negative nor prohibitive language appears in the Act, and that there is nothing contained in it which is naturally expressive of an intention to make compliance a condition precedent to action, or to thereby create a limitation of power. We are therefore of the opinion that it is not of the essence of the thing to be accomplished: that it relates to a matter of convenience and not of substance.

The only other questions presented to the court, or considered and determined by it, related to the merits of the plan for the separation of the grades which was adopted and ordered executed by the railroad commissioners, and of other plans adapted to the same end. The court entered upon an exhaustive investigation of these questions, and, as the result, rendered judgment setting aside the order of the commissioners and directing the abolition of the crossing in accordance with another plan and other specifications original with itself. The present appellants assign this action as error, alleging that in pursuing the course it did the court exceeded its powers.

The broad claim thus stated assumes two forms in the reasons of appeal and argument. It is said that the statutes do not in terms undertake to confer upon the Superior Court upon appeals of this character the powers which were exercised. The claim, however, which is most strenuously urged is, that any legislative attempt to confer such power would be in contravention of the prohibitions of our Constitution. We are of the opinion that the court was right in interpret-

ing the statutes as intending and purporting to confer upon it the authority to do in general what it did. With certain matters of detail which are specially objected to we need not now concern ourselves. There remains to be considered the constitutional question presented.

This question involves the underlying and fundamental one of the limitations which, in our scheme of constitutional government and under our Constitution, are imposed upon the powers which may be exercised through the judicial department. The question is not one new to our deliberations. None other, perhaps, has been more frequently before us in recent years, or had a more deliberate consideration and exhaustive discussion. This discussion need not be rehearsed: it is sufficient to recall the conclusions which have been reached and carefully stated and reiterated.

" The incapacity of the legislature to execute a power which is essentially and merely a judicial power, and of the judiciary to execute a power which is essentially and merely a legislative power, . . . . are fundamental to the very existence of constitutional government as established in the United States. . . . But no *dicta* of judges, no doubtful or improper legislation, can alter the plain fact that in 1818 the people, in the exercise of their sovereignty, granted to the General Assembly then constituted the legislative power, and forbade their exercise of other than legislative power (unless specially granted) ; and granted to this court and other courts then constituted the judicial department, the judicial power, and forbade their exercise of other than judicial power. . . . While the necessity and right of each department to use the means requisite to its unfettered operation, is clear, it is equally clear that when one department not only uses the means appropriate to another, but uses them for the purpose of executing the functions of that other department, it is not in the exercise of its granted power." *Norwalk Street Ry. Co.'s Appeal*, 69 Conn. 576, 592, 593, 597. " The incapacity of the judicial department, under our Constitution, to exercise functions

that are essentially and distinctively executive or legislative, unless as incident to the exercise of some legitimate judicial power, was so deliberately considered and settled in the recent case of *Norwalk Street Ry. Co.'s Appeal*, 69 Conn. 576, and the application of this constitutional prohibition was then so fully discussed, that we deem it unnecessary to say anything further on the subject now. . . . It is, however, true that a particular function may be so near the border line of judicial power that its definition calls for subtle distinctions and its nature depends to an extent on the purpose and manner of its use ; and in respect to such a function its long association with judicial action may be decisive of its character, so far at least as to justify its treatment as being, according to circumstances, either within the judicial or executive power. . . . To this extent *Hopson's Appeal* (65 Conn. 140) is affirmed in *Norwalk Street Ry. Co.'s Appeal, supra*, where it is held that 'appeals' allowed by various statutes from the action of administrative and legislative boards are not appeals in the sense of a transfer of jurisdiction from one court to another, but that such statutes must be construed as providing a process, under the misleading name of appeal, for invoking the judicial power to determine a legal injury complained of, or the legality of an act done by the officers of another department." *Malmo's Appeal*, 72 Conn. 1, 4, 5, 6. These repeated declarations we have emphasized by saying that the contrary doctrine, which would countenance a union in one department of functions appropriate to two or more departments, would be subversive of the American idea of constitutional government and a menace to civil liberty. *Norwalk Street Ry. Co.'s Appeal*, 69 Conn. 576, 585, 594.

These emphatic enunciations of the law render it only necessary to bring the situation in the case at bar to the tests thus furnished.

That the board of railroad commissioners is an administrative one, that the subject-matter of its action in the proceedings appealed from was purely administrative, and that the proceedings before it and its order therein were

also administrative and in no sense judicial, are propo-
sitions which need no argument to support them. *State
v. New Haven & N. Co.*, 43 Conn. 351; *State ex rel. New
York & N. E. R. Co.* v. *Asylum Street Bridge Commission*,
63 id. 91; *New York, N. H. & H. R. Co.* v. *Bridgeport
Traction Co.*, 65 id. 410.

After having disposed of the preliminary question of
jurisdiction already considered, the problem which the Su-
perior Court set itself to solve was precisely that which
was before the commissioners. There was no pretense of
making it assume any other form, or that judicial questions
of any sort were complicated with it. Neither counsel nor
court sought by any feats of intellectual jugglery to dis-
guise the patent fact that what the court undertook to do
and did was to examine the scheme for the elimination of
the crossing ordered by the commissioners, to see if it was
the best one, all things considered, which could be devised,
and if not, to devise and prescribe the best one. That the
court fully recognized this as the true situation is clearly
evidenced by the opening sentence of its memorandum of
decision, as follows : " The question at issue upon this ap-
peal is confined to the method of abolishing the grade-
crossing at Main Street," etc., etc.; and the following
language with which it concludes: " I am entirely satisfied
that in the long run the solution of this grade-crossing
problem in the manner reached will prove the most satis-
factory to the steam railroad and to the street railway, and
result in a charge upon them not excessive under the cir-
cumstances, and to the general public it will prove the best
possible solution that the situation affords." Between
these opening and concluding sentences are substantially
ten pages of the printed record, embodying a minute and
exhaustive discussion of the merits of the commissioners'
plan and of other plans, and of the problem involved in the
attempt to abolish the existing grade-crossing, in its various
aspects—practical, engineering, æsthetic and financial.
This memorandum, and the rest of the record, will be ex-
amined in vain for any suggestion of a claim or considera-

tion that the action of the commissioners, aside from the matter already adverted to which entered in no way into the adoption of the plan, was in any respect unauthorized in law, irregular or informal, or based upon a misconception of the law or of their powers or duty, or that the legal right of anybody had been invaded, or threatened. It was not even claimed that there had been an improper distribution of the burden of the cost, or that the action of the commissioners was so unreasonable as to justify judicial interference to set it aside. The case is absolutely barren of every consideration save those of policy and practical expediency as related to the proposed improvement as an engineering enterprise designed to accomplish practical results promotive of the general welfare. It presents no features save such as would arise from a difference of honest opinion among competent men. The court upon its investigation of the problem saw fit to disagree with the commissioners as to what was wisest and best, and for that reason and that alone set aside their order and thereupon proceeded to take cognizance of the entire problem as one before it for original action and to sit, as the commissioners had sat, to investigate and determine upon the method to be employed in the separation of the grades. Clearly the court in what it did was not exercising judicial functions, or functions which approach the border line of judicial power. They were distinctly administrative and therefore such as it was powerless to exercise, no matter what authority legislation may have sought to confer. There was nothing in the case to justify the court in the exercise of judicial power to set aside the order of the railroad commissioners, much less to enter upon an independent determination of the question as to the method which should be employed in the abolition of the grade-crossing.

There is error and the causes are remanded for the rendition of judgments confirming the order of the railroad commissioners.

In this opinion TORRANCE, C. J., HAMERSLEY and HALL, Js., concurred.

BALDWIN, J. (dissenting). I concur in the foregoing opinion, except so far as it relates to the constitutionality of the statute under which the appeal to the Superior Court was taken.

This proceeding, when pending before the railroad commissioners, was a quasi-judicial one. *Chester* v. *Connecticut Valley R. Co.*, 41 Conn. 348, 355 ; *State* v. *New Haven & N. Co.*, 43 id. 351, 381 ; *Woodruff* v. *New York & N. E. R. Co.*, 59 id. 63, 88. A quasi-judicial proceeding may become a judicial one, if transferred by way of appeal or review to a judicial tribunal. *Beard's Appeal*, 64 Conn. 526, 534 ; *Hopson's Appeal*, 65 id. 140, 146 ; *Norwalk Street Ry. Co.'s Appeal*, 69 id. 576, 599, 607 ; *Upshur County* v. *Rich*, 135 U. S. 467, 477 ; *People* v. *Long Island R. Co.*, 134 N. Y. 506, 31 Northeastern Rep. 873. This has been so transferred by express statutory authority. General Statutes, §§ 3747, 3718.

There must always be a Superior Court, but it is for the General Assembly to define its powers and jurisdiction. Const., Art. V, § I. My associates are of opinion that these sections of our General Statutes are unconstitutional in so far as they purport to authorize the Superior Court, on an appeal of the nature of that now before us from an order of the railroad commissioners, should it disaffirm their order, to make a new one of its own, settling the questions in controversy on their merits. I agree that it would ordinarily be the preferable course to let the proceeding go back to the railroad commissioners and leave it to them to frame a proper order, subject to review, in case of need, by another appeal. I do not agree that such is the only course that can be taken. The doctrine laid down in the opinion of the court seems to me opposed to the words and intent of the Constitution ; to the long settled practice of the State ; and to repeated decisions of our own. *Hall* v. *Meriden*, 48 Conn. 416, 427 ; *Gravel Hill School District* v. *Old Farm School District*, 55 id. 244, 246 ; *Westbrook's Appeal*, 57 id. 95, 104 ; *Fairfield's Appeal*, ibid. 167, 172 ; *Beard's Appeal*, 64 id. 526 ; *Hopson's Appeal*, 65 id. 140, 146 ; *Ives* v. *Goshen*, ibid. 456, 459 ; *Central Ry. & Elec. Co.'s Appeal*, 67 id. 197, 211 ; *New Haven*

*Steam Saw Mill Co.* v. *New Haven,* 72 id. 276 ; *Fair Haven & W. R. Co.* v. *New Haven,* 74 id. 102, 105 ; *Malmo's Appeal,* 72 id. 1, 5 ; *New York, N. H. & H. R. Co.'s Appeal,* 75 id. 264, 266.

The vital point in *Norwalk Street Ry. Co.'s Appeal,* 69 Conn. 576, 600, was the want of any action on the part of the municipality on which an appeal could be founded, so that the Superior Court was in effect asked to take original cognizance of the matter (p. 603). The validity of the statute on which the present proceeding is taken was not questioned, but on the contrary was assumed (p. 611).

For these reasons, and others indicated in my opinions filed in *Norwalk Street Ry. Co.'s Appeal,* 69 Conn. 576, 603 ; *Bradley* v. *New Haven,* 73 id. 646, 651 ; and *Moynihan's Appeal,* 75 id. 358, 366, I dissent from the opinion of the court.

It would have seemed to me a better course for the Superior Court, on disaffirming the order appealed from, to go no farther but let the cause go back for a more equitable disposition by the railroad commissioners. *Waterbury's Appeal,* 78 Conn. 222. But in my view, this was a question to be decided according to the best discretion of the trial court, and if it thought proper to proceed to frame an order of its own, to do so was within its right.