INTERSTATE SANITATION COMMISSION, COMPLAINANT–
RESPONDENT, v. TOWNSHIP OF WEEHAWKEN IN THE
COUNTY OF HUDSON, ET AL., DEFENDANTS–APPEL-
LANTS.

Argued December 20, 1948—Decided January 24, 1949.

*Mr. Anthony J. Armore* argued the cause for the defendants-appellants (*Mr. John N. Platoff*, attorney for the Township of Weehawken; *Mr. Fred Eichmann*, attorney for the City of Union City; *Mr. Samuel L. Hirschberg*, attorney for the Town of West New York; *Messrs. Anthony J. Armore* and *John N. Platoff*, attorneys for the Joint Meeting).

*Mr. J. Raymond Tiffany* argued the cause for the complainant-respondent.

The opinion of the court was delivered by

VANDERBILT, C. J. This is an appeal by the defendants from a decree of the former Court of Chancery which, among other things, orders that, beginning with May 15, 1951, the defendants refrain from discharging or permitting the flow of raw sewage and other polluting matter into the waters of the Interstate Sanitation District unless it is first treated so as to conform with the minimum purity standards set forth in *R. S.* 32:18–8(2) and the applicable orders of the complainant commission. The decree further directs the defendant municipalities to submit to the complainant a comprehensive report of the method by which they intend to comply with the foregoing restraint on or before May 15, 1949, and to enter into the necessary contracts for the construction of appropriate sewage treatment works or other devices on or before May 15, 1950.

All of the questions argued on this appeal were presented to and disposed of by the court below in a thorough and well-reasoned opinion. Were it not for one point which, in our judgment, makes essential a modification of the scope of the decree, we should be content to rest our decision entirely upon the opinion of the learned vice-chancellor.

The tri-state compact, entered into by the States of New Jersey, New York and Connecticut, in order to effectuate its objective of abating existing pollution and controlling future pollution of the designated water areas in and about New York Harbor, directed the complainant commission to promulgate orders, after investigation and public hearings, prescribing "the reasonable date on or before which each municipality or other entity discharging sewage into the designated waters * * * shall be treating such sewage in accordance with the standards specified in this compact," R. S. 32:18–11. This section is supplemented by R. S. 32:19–6, prohibiting the creation or maintenance of any new sources of pollution not existing on April 1, 1935, "provided, that after hearing and investigation on application of such person, firm or corporation, municipal or otherwise, the commission may issue such order relating to any such pollution as it shall find will best serve the public interest." And, under the terms of R. S. 32:19–7, "whenever the commission shall determine upon investigation that sewage * * * is being discharged into any waters of the district, and * * * in the opinion of the commission such discharge is polluting such waters in a manner injurious to or so as to create a menace to public health, welfare and recreational purposes, or so as to create a public nuisance, or so as to be obnoxious," the commission is authorized upon appropriate notice and hearing to "prescribe a reasonable date on or before which such municipality, corporation or person discharging sewage * * * into the designated waters within the district, shall cease to discharge such refuse or other matter and shall treat such sewage in accordance with the standards specified in the compact * * *." These provisions, in turn, are implemented by R. S. 32:19–4 empowering the commission to compel compliance with its orders, the laws governing the control or elimination of pollution of the district waters, and the terms of the compact by an action or proceeding "in an appropriate court having jurisdiction for the purpose of having such violations or threatened violations stopped and prevented either by mandamus or injunction."

The present cause has its origin in a proceeding before the complainant commission by virtue of *R. S.* 32:19–6. In 1938, the existing joint sewer of the defendant municipalities having become overloaded, they entered into an agreement and formed the defendant Joint Meeting for the purpose of constructing and operating a joint outlet relief sewer. Because the contemplated sewer was to discharge into the Hudson River and would thus constitute a new source of pollution within the district waters, the defendants made application to the complainant for its consent to the construction of the sewer. Following a hearing on the application, the complainant granted its approval of the undertaking by order of October 4, 1938, conditioned, however, upon the defendants' pledge to erect and have operating by October 1, 1943, a sewage treatment plant which would adequately treat all sewage emanating from the joint outlet sewer in conformity with the standards of the compact and the related statutes. At the request of the defendants and by order of the complainant of February 6, 1946, the completion date of the treatment plant was extended to September 1, 1947, provided that the necessary resolution for the aquisition of land for a site were adopted prior to May 1, 1946 and that the construction contracts be awarded and executed prior to September 1, 1946. Defendants having defaulted in the performance of the conditions of the amending order, this suit was commenced by complainant.

It is evident that all of the proceedings had before the complainant, as well as the orders issued by it, related only to the joint sewer system maintained and to be constructed by the defendants. They were not intended to and did not in fact touch upon or include the separate sewage systems maintained independently by at least two of the defendant municipalities which discharge from several outlets into the Hudson River, and which existed prior to April 1, 1935. The decree below, however, makes no distinction between the joint and separate sewage systems, and in effect directs the defendants to treat sewage flowing into the district waters from all outlets of sewers maintained by them.

It is conceded by the complainant that, prior to the commencement of this suit, no hearings were held and no orders were issued by it with regard to the discharge of untreated sewage from the independent systems maintained by the defendant municipalities. Notwithstanding, the commission contends that the former Court of Chancery had the power in the first instance to make such a decree without a hearing and an order by the commission by virtue of the terms of R. S. 32:19–4. This section, after authorizing the commission to commence proceedings to stop and prevent violations or threatened violations of its orders, the provisions of the compact, or the supporting statutes in a court of competent jurisdiction of this State, grants to said court "the necessary and appropriate jurisdiction to determine such action upon the merits and/or to grant mandamus or injunction as the case may require or any other relief appropriate to the case."

Obviously, it was not intended by the Legislature that recourse might be had to the courts where there had been no violation, actual or threatened. There is nothing in either the provisions of the compact or the terms of the implementing legislation which prohibits the continued maintenance of outlets discharging untreated sewage which were in existence prior to April 1, 1935, except as the complainant commission directs otherwise by its order after hearing, R. S. 32:18–11, 32:19–7.

Moreover, the duty imposed upon the complainant by the above cited sections of prescribing a time on or before which a municipality or other entity must be treating sewage emanating from outlets existing before April 1, 1935, is essentially legislative in character; the investigatory and hearing powers granted to the commission are merely in aid of and preliminary to the exercise of this legislative act. Manifestly, it is not within the province of the courts to exercise this legislative function, especially where, as here, the legislative function is delegated to an interstate body which would be *pro tanto* deprived of its legislative functions if the courts of any one of the states which is a party to the compact might adjudicate without prior legislative action by the commission, *Appeal of Spencer*, 78 *Conn.* 301, 61 *A.* 1010 (1905). Legislative action

in such matters by the commission itself is essential to the maintenance of uniform standards by the commission in the prosecution of its work. The commission itself accorded tacit recognition to this fundamental principle when, during the pendency of the present suit, it initiated and held a hearing with respect to the outlets maintained separately and independently by the defendant, Township of Weehawken.

In the light of these considerations, the decree below will be modified by limiting its operation to the joint sewer system maintained by the defendants but except as otherwise indicated herein the opinion of the learned Vice Chancellor is adopted by this Court.

*For modification:* Chief Justice VANDERBILT, and Justices CASE, HEHER, WACHENFELD, BURLING, and ACKERSON—6.

*Opposed:* None.