JOHN BLAKE ET AL. *v.* ROBERT V. MEYER ET AL.

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

Argued October 9—decided October 28, 1958

*Herman D. Silberberg,* for the appellants (named defendant et al.).

*Joseph B. Buckley,* with whom was *Howard D. Olderman,* for the appellees (plaintiffs).

KING, J. In a complaint and a counterclaim a declaratory judgment was sought, together with certain incidental relief, determining whether John Blake was legally appointed as clerk of the board of assessors of the city of Ansonia. Questions as to appointments to other offices, in part decided in the court below, have become moot as a result of subsequent events. This appeal by certain of the defendants is prosecuted only as to that portion of the judgment declaring that Blake was the legally appointed clerk of the board of assessors.

The facts are not in dispute. The defendant members of the board of aldermen were elected for a term of two years beginning December 1, 1956. The defendant Doyle was elected as mayor for the same term. He had been the clerk of the board of assessors for several years. At a meeting of the board on

November 27, 1956, his resignation as clerk was accepted effective November 30, and Blake was appointed as clerk in his stead. The appointment was filed with Paul E. Schumacher, town and city clerk of Ansonia, on December 8, 1956, more than forty-eight hours before the next meeting of the board of aldermen of the city, to be held on December 10, 1956. This meeting was adjourned to December 17 without action having been taken on the Blake appointment. At the adjourned session, the Blake appointment was tabled. Final adjournment took place at the close of the meeting. At the next meeting of the board of aldermen, held on January 14, 1957, the Blake appointment was taken from the table and rejected.

The decision of the case turns on the proper interpretation of the language employed in §§ 73[1] and 9[2] of the Ansonia charter. 20 Spec. Laws 488, § 1;

[1] "Sec. 73. . . . The board of assessors . . . shall appoint a clerk of said board, who shall hold office during the term of his appointment, which . . . shall be for not less than two nor more than six years as shall be determined by said board. . . . The appointment of said clerk . . . shall be subject to approval by the board of aldermen in the same manner that appointments made by the mayor . . . are subject to approval by said board of aldermen."

[2] "Sec. 9. The mayor shall, within ten days after his qualification, and at least forty-eight hours prior to a regular meeting of the board of aldermen, or a special meeting . . . called for that purpose, file with the city clerk the nominations of . . . [certain designated] officers . . . and said nominations shall be confirmed or rejected separately and individually by said board of aldermen at its next meeting after they are made. In the event of any nominations being rejected by said board, the mayor shall, at least forty-eight hours before the next regular meeting of said board, or a special meeting of said board duly called for that purpose, file with the city clerk nominations of other persons in the place of those rejected, unless otherwise provided for in this act; and in the event of further rejections, shall continue to file nominations in the manner and form as aforesaid, and of other persons in place of those rejected, until all of . . . [such] offices . . . shall be confirmed [sic] and filled. In the event

14 id. 732, § 3. The board of aldermen failed to confirm or reject the Blake appointment at either the meeting of December 10 or the adjourned session of that meeting on December 17. Even purported rejection did not take place until the next regular meeting, held on January 14. The sole question is the effect on Blake's appointment of the failure of the board of aldermen either to confirm or reject it within the time prescribed by the charter.

In the first place, § 73 of the charter provides that the board of assessors shall "appoint" a clerk and that this appointment "shall be subject to approval by the board of aldermen." This portion of the charter does not provide for a nomination of a candidate for approval and appointment by the board of aldermen. Rather, it provides for an appointment to office by the board of assessors. While § 73 in effect provides that the board of aldermen shall either confirm or reject the appointment, it is obvious that the real power is the power of rejection. This is so because the action of the board of assessors is an appointment and not a nomination. The appointment can be defeated by a condition subsequent, that is, its rejection by the board of aldermen in accordance with the terms of the charter. The provision in § 9 with respect to nominations made by the mayor is entirely different. It is there provided that he shall nominate, not appoint, certain officers and boards, and that his nominations shall be confirmed or rejected by the board of aldermen. The distinction between "appoint" and "nomi-

---

of the neglect or refusal of the mayor to file said nominations as hereinbefore provided, the board of aldermen at its next regular meeting, or a special meeting duly called for that purpose, may fill the vacant offices . . . and confirm other persons in the place of those previously rejected . . . ."

nate" is significant, even though it was lost sight of by the draftsman in the sentence of § 73 last quoted in footnote 1. See *State ex rel. Barlow* v. *Kaminsky,* 144 Conn. 612, 618, 136 A.2d 792. Words used in a statute must be accorded their commonly accepted meaning unless the contrary clearly appears. General Statutes § 8890; *McAdams* v. *Barbieri,* 143 Conn. 405, 416, 123 A.2d 182.

In the second place, the language of § 9 directs that the board of aldermen "shall," not "may," confirm or reject "at its next meeting." In other words, mandatory, as distinguished from permissive, language is used, and this applies not only to the duty to act but to the time within which that duty is to be performed. *State ex rel. Foote* v. *Bartholomew,* 103 Conn. 607, 612, 132 A. 30. The pertinent language of § 9 may be paraphrased to apply to the present appointment under § 73, as follows: the appointment of clerk of the board of assessors shall be confirmed or rejected separately and individually by the board of aldermen at its next meeting after the appointment is made. It is clear that the provision under consideration is mandatory, not merely directory, even in the absence of prohibitory or negative language. *Winslow* v. *Zoning Board,* 143 Conn. 381, 388, 122 A.2d 789, and cases cited.

It follows that the appointment of Blake became final and beyond the power of defeat by any action of the board of aldermen upon its failure to reject the appointment within the time provided in the charter. See *State ex rel. Morris* v. *Bulkeley,* 61 Conn. 287, 367, 23 A. 186; *Cahill* v. *Leopold,* 141 Conn. 1, 20, 103 A.2d 818. Whether this time expired at the close of the regular meeting on December 10, or whether it continued until the close of the adjourned session of that meeting on December 17, it

is unnecessary to determine. It clearly came to an end upon final adjournment of the meeting of December 17.

There is nothing in two Connecticut cases relied upon by the defendants which militates against this result. In *State ex rel. Hendrick* v. *Keating*, 120 Conn. 427, 437, 181 A. 340, and *State ex rel. McCarthy* v. *Watson*, 132 Conn. 518, 520, 45 A.2d 716, the language of the applicable statutes was that the "governor shall nominate and, with the advice and consent of the senate, appoint," the officer. This is markedly different from an appointment subject to the approval, within a designated time, of the legislative body, as provided in the Ansonia charter. It is the precise language of the Ansonia charter which must be interpreted in this case.

There is no error.

In this opinion the other judges concurred.