STATE EX REL. DONALD BARNARD *v.* JOHN AMBROGIO ET AL.

HOUSE, C. J., COTTER, THIM, SHAPIRO and LOISELLE, Js.

Argued January 4—decided March 7, 1972

*Dennis J. Donahue, Jr.,* for the appellant (named defendant).

*Lawrence R. O'Brien,* with whom, on the brief, were *Joseph R. Greco,* town attorney, and *Henry W. O'Brien,* for the appellee (plaintiff).

THIM, J.   This case involves an appeal from a judgment of the trial court determining that neither of the two defendants had established his right to hold the office of deputy police chief of the town of Hamden.  Following the appointment of the defendant John Ambrogio and the defendant Clarence A. Drumm to the office of deputy police chief, three separate quo warranto proceedings were instituted to test by what authority each claimed to hold the office. Since each defendant claims to have been lawfully

appointed, each brought a separate action of quo warranto as relator with the other as the defendant. In the third action, the plaintiff, W. Donald Barnard, the finance director of the town of Hamden and a taxpayer of that town, named both appointees as defendants and claimed that neither was legally entitled to hold office. The three actions were joined for trial and the court found for the plaintiff. Judgment was rendered and the court adjudged that the defendants be ousted and excluded from the office. From the judgment rendered, the defendant Ambrogio appealed to this court. Pursuant to a written stipulation, it was agreed that only one record would be printed to present the issues to this court and that any judgment rendered on the appeal in the Barnard case would be conclusive on the parties in Drumm's action against Ambrogio.

The finding, as corrected, discloses the following facts: On August 17, 1957, the town of Hamden adopted, by referendum, what is now chapter 113 of the General Statutes, establishing a merit or civil service system for its employees. Pursuant to that chapter, a civil service commission was created which, in May, 1962, issued comprehensive rules and regulations. Under these regulations, the office of deputy police chief was excluded from the classified service. Thereafter, in 1964, the electors of the town adopted a municipal charter as authorized by chapter 99 of the General Statutes, hereinafter referred to as the Home Rule Act, the effective date of the charter being January 1, 1966. In July, 1967, the civil service commission revised its regulations to conform with the charter provisions. Public notice, however, of the place where a copy of the rules could be obtained was not given until January, 1968. Nor was a certified copy of the rules filed with the clerk

of the Superior Court until that day. Under the charter and revised regulations, the office of deputy police chief was included within the classified service. On December 27, 1967, a vacancy existing, John DeNicola, then the mayor, appointed the defendant, Ambrogio, to the position of deputy police chief. Immediately following the appointment, the defendant was given the oath of office and he commenced to perform the duties of the office for approximately one month before resuming the duties of detective sergeant. On December 29, 1967, the board of police commissioners purportedly appointed Drumm to the same office.

From these facts the court concluded: (1) that the regulations adopted by the commission in May, 1962, were subject to the provisions of § 17-5 of the Hamden charter[1], effective January 1, 1966; (2) that under the charter and the regulations, as re-

[1] "[Charter, Town of Hamden] Sec. 17-5. STATUS OF PRESENT EMPLOYEES. All persons holding permanent positions in the service of the town (at the effective date of this charter), including employees of a board or commission, whose positions are included in the classified positions by the terms of this chapter, shall immediately become members of the classified service and retain such positions until promoted, transferred, reduced or removed in accordance with the provisions of this chapter. All other employees of the town at the effective date of this charter, whose positions are not abolished by the provisions of this charter, shall retain such positions pending action by the council or the appropriate officer charged by this charter with the power of appointment and removal. Any provision of law in force on the effective date of this charter, and not inconsistent with the provisions of this charter, in relation to personnel, appointment, ranks, grades, tenure of office, promotions, removal, pension and retirement rights, civil rights or any other rights or privileges of employees of the town or any office, department or agency thereof shall continue to be in effect, until or unless amended or repealed by the council. Any permanent employee presently in the classified service of the Town of Hamden whose position is abolished by the adoption of this charter shall be relocated to other comparable employment with the Town of Hamden at a salary or wage not less than that he is presently receiving."

vised in 1967, the office of deputy police chief was included within the civil service system; (3) that since the 1962 regulations were inconsistent with the charter provisions in that they excluded the office from the classified service, the rules were amended by the charter so as to include the office within the classified service; and (4) since Ambrogio's appointment was not made in conformance with the provisions in § 10-3 of the charter, his appointment was invalid.[2]

The central issue in the case at bar is whether the office of deputy police chief was in the classified service on December 27, 1967, the date the defendant Ambrogio was appointed.

In 1957, the town of Hamden, as authorized by what is now chapter 113 of the General Statutes, established a merit or civil service system, the purpose of which was to select and promote public officials, within the classified system, on the sole basis of their proven ability. Once instituted, a civil service commission was created which was required under General Statutes § 7-411 to "classify all the officers and employees in the departments for which the merit system has been adopted, except elected officers."[3] The civil service commission was also authorized to adopt rules and regulations by which the system was to be regulated. In May, 1962, a set

[2] "[Charter, Town of Hamden] Sec. 10-3. POLICE COMMISSION. . . . In addition the police commission shall be empowered to select personnel for appointment or promotion, by majority vote, from the top three (3) candidates on any applicable civil service eligibility list. The chief of police shall provide a recommendation for such appointment or promotion."

[3] "[General Statutes] Sec. 7-411. CLASSIFICATION OF OFFICERS AND EMPLOYEES. Such civil service board shall, within ninety days after the initial appointment of such commissioners, classify all the officers and employees in the departments for which the merit system has been adopted, except elective officers, as provided in section 7-407;

of regulations was promulgated by the commission, published and filed pursuant to § 7-412 of the General Statutes. These regulations, inter alia, classified the officers and employees in the departments to which the system was to apply. Not all officers and employees, however, were required to be classified. Section 7-411 of the General Statutes allowed the civil service commission, "in its discretion," to exempt from testing and competition "the officer responsible for the policy of any department, and one deputy." Pursuant to this discretion, the civil service commission specifically excluded the position of deputy police chief from the classified service in its 1962 regulations. "The Classified Service shall not include . . . Deputy Police Chief." Rule 1, § 2. These regulations were in no relevant way changed or amended prior to the effective date of the charter.

The defendant's principal claim is that the office of deputy police chief remained unclassified even after the adoption of the charter in that the Home Rule Act does not authorize the municipality by way of the creation of a charter to adopt or amend the civil service system or to abrogate the regulations then existing. He further contends that any amendment to the already-established civil service system can only be made in accordance with the existing regulations and pursuant to the provisions of chapter 113 of the General Statutes. The plaintiff takes issue with these contentions and argues that while

and the board may also, in its discretion, exempt from test and competition the officer responsible for the policy of any department, and one deputy, private secretary or other confidential employee of such officer. The officers and employees so classified by such board shall constitute the classified civil service, and no appointment of any such officer or employment of any such employee shall be made except in accordance with the rules hereinafter provided for."

the office was excluded under the 1962 regulations, it was placed within the classified service by a charter amendment to the civil service system as legally authorized by the Home Rule Act. For the reasons hereinafter specified, we conclude that the town was not empowered to amend the system by the purported amendment thereto which appears in the charter.

Finding a lengthy discussion unnecessary, it will suffice to say that a civil service system was intended to be, and in fact was, established by the charter and that the office of deputy police chief was to be included within the classified service.[4] The narrowly drafted issue then becomes whether the provisions of the Home Rule Act authorize a municipality to include in its charter such a power to either create a new classified service or modify a classified service previously established under chapter 113. The plaintiff contends that the amendment is authorized by the Act. For such a determination we must look to chapter 99 itself.

Section 7-194 of chapter 99 of the General Statutes, relied on by the plaintiff, provides that "all towns . . . which adopt or amend a charter under the provisions of this chapter shall have the following specific powers in addition to all powers granted to towns . . . under the constitution and general statutes." The specific powers referred to are contained in fifty-seven subsections to § 7-194. In analyzing all fifty-seven subsections we find that there is no express reference whatsoever to a merit or civil service system. That the legislature went to the extent of precisely enumerating fifty-seven specific powers

---

[4] The relevant portion of the charter is chapter 17, entitled "Personnel–The Merit System," and containing, among others, §§ 17-1—17-5.

without mentioning a civil service system indicates that it did not intend to grant the municipalities such a power by way of a charter adoption. "An enumeration of powers in a statute is uniformly held to forbid the things not enumerated." *State ex rel. Barlow* v. *Kaminsky*, 144 Conn. 612, 620, 136 A.2d 792; *State ex rel. Morris* v. *Bulkeley*, 61 Conn. 287, 367, 23 A. 186.

The only grant of power in the Home Rule Act which could possibly be construed to encompass a civil service system is contained in § 7-194 (56). This subsection specifically empowers municipalities to "establish pension systems for the officers and employees of the town . . . and to establish a system of qualifications for the tenure in office of such officers and employees, provided the right of benefits granted to any individual under any municipal retirement or pension system shall not be diminished or eliminated." There is no language in § 7-194 (56) indicating a clear legislative intent that a town in adopting a charter is empowered to either create a civil service system or to amend an already existing one. "Courts cannot import into legislation an intent not expressed in some appropriate manner." *Loew* v. *Falsey*, 144 Conn. 67, 72, 127 A.2d 67; *Mad River Co.* v. *Wolcott*, 137 Conn. 680, 688, 81 A.2d 119; *Lee Bros. Furniture Co.* v. *Cram*, 63 Conn. 433, 438, 28 A. 540. " '[W]e cannot speculate upon any intention not appropriately expressed in the language of the act itself.' . . . Legislative intent is to be found, not in what the legislature meant to say, but in the meaning of what it did say. . . . Thus, the intent of the legislature, as expressed, is the controlling factor above all others." *Hartford Electric Light Co.* v. *Water Resources Commission*, 162 Conn. 89, 98, 291 A.2d 721.

Looking at what was actually expressed, we find that § 7-194 (56) grants two powers: (1) to create a pension system, and (2) to create a system of qualifications for the tenure in office. The plaintiff argues that the latter power includes the power to establish a civil service system as drafted in chapter 17 of the charter. We do not agree. The first power under § 7-194 (56) merely allows a municipality to establish a pension system for the town employees and nothing more. It is not essential to a pension system that a municipality also have a civil service system. That a pension system may be created without enacting a merit system was recognized by the legislature in passing legislation adopting separate chapters covering: (1) pensions, (2) a merit system, and (3) a retirement system. The second power under § 7-194 (56) empowers a municipality to establish a system of qualifications for tenure for employees brought within the pension fund. The words "to establish a system of qualifications for the tenure," either out of context or construed with the other language used in the subsection, do not expressly or impliedly empower the municipality to establish a civil service system. As used in § 7-194 (56) the word "tenure" refers to the term of employment and the fact that employees may have tenure of office does not necessarily mean that they must be under a merit or civil service system. We, therefore, find that neither § 7-194 (56) nor any other provision within the Home Rule Act empowers a municipality to establish or amend a civil service system. If the legislature had wished to grant the municipality such a power, it could easily have done so. Nor do we find the principles enunciated in *State ex rel. Sloane* v. *Reidy,* 152 Conn. 419, 209 A.2d 674, applicable to the case at bar. In that case the charter of

the city of Waterbury, enacted in 1931 (21 Spec. Acts, No. 499), empowered the city to amend its charter by providing for a civil service system. We hold that the portion of the Hamden town charter purporting to create or amend a merit system is void and ineffective.

The issue now arises as to the effect of the civil service commission's revised regulations of 1967 on the office of deputy police chief. By these regulations the commission purportedly amended its May, 1962, regulations, the effect of which was to include the office in the classified service. The defendant makes the claim that the new regulations, although dated July, 1967, did not become effective until sometime in 1968, well beyond the crucial date of December 27, 1967, when he was appointed. He bases this claim on the theory that the publication and filing provisions contained in General Statutes § 7-412 are mandatory, not directory, so that unless and until they are complied with the new regulations are ineffective and inoperative and the 1962 regulations remained in effect.[5] The finding, as corrected, discloses that the provisions of § 7-412 were not complied with until January 16, 1968. In July, 1967, the civil service commission had failed: (1) to give public notice of the places where copies of the rules

[5] "[General Statutes] Sec. 7-412. PUBLICATION AND FILING OF RULES. All rules made as herein provided and all changes therein shall be printed forthwith for distribution by such [civil service] board, and the board shall give public notice of the place or places where copies of such rules may be obtained. In each such publication shall be specified the date, not less than ten days subsequent to the date of such publication, when such rules shall take effect. The rules affecting any test shall in no case be changed after the publication of notice of such test. Copies of all such rules and of all changes therein, certified by the secretary of the board, shall be filed with the clerk of the superior court for the appropriate county, within ten days after the adoption thereof, and shall be filed, preserved and indexed by such clerk."

could be obtained; (2) to publish a date when the new rules would take effect; and (3) to file the rules with the clerk of the Superior Court.

In determining whether the provisions of a statute are mandatory or imperative, or merely directory, " 'the test most satisfactory and conclusive is, whether the prescribed mode of action is of the essence of the thing to be accomplished, or in other words, whether it relates to matter material or immaterial — to matter of convenience or of substance.' . . . In the determination . . . as to whether or not a provision . . . is of the essence of the thing to be accomplished . . . significance is to be attached to the nature of the act, . . . the language and form in which the provision is couched." *Spencer's Appeal,* 78 Conn. 301, 303, 61 A. 1010; see *Broadriver, Inc.* v. *Stamford,* 158 Conn. 522, 529, 265 A.2d 75; *International Brotherhood of Teamsters* v. *Shapiro,* 138 Conn. 57, 68, 82 A.2d 345. In applying these principles we are satisfied that the provisions of § 7-412 of the General Statutes are mandatory. Section 7-412 states that the commission "shall," not "may," perform certain obligations when making regulations or regulation changes. Mandatory, as distinguished from permissive, language is used. See *Blake* v. *Meyer,* 145 Conn. 612, 616, 145 A.2d 584. The commission is called on to act without exercising its own judgment. The intent of the legislature, as reflected in the language used, is that compliance with the provisions of § 7-412 is necessary before the regulations go into effect. What is required to be done is of substance, and not for mere convenience. In addition, this court has recently stated that "[s]trict compliance with the terms of the civil service law is required where the legislative intention is manifest in the light of the purposes of such a stat-

ute. . . . It is mandatory that every requirement of the civil service law be followed, and proof that substantial compliance exists is not enough. 'The doctrine of substantial compliance has no application to the performance of duty by those entrusted with the administration of the civil service law. It would open the door to abuses which the law was designed to suppress. The law provides for a complete system of procedure designed to secure appointment to public positions of those whose merit and fitness have been determined by examination, and to eliminate as far as practicable the element of partisanship and personal favoritism in making appointments.'" *Resnick* v. *Civil Service Commission,* 156 Conn. 28, 32, 238 A.2d 391. The provisions of § 7-412 of the General Statutes being mandatory, the commission's failure to comply with them rendered the 1967 revised regulations invalid and inoperative until February 7, 1968.[6] We conclude that on December 27, 1967, the 1962 regulations were still in effect, the result being that the office of deputy police chief was not within the classified service.

One final point deserves our consideration. On December 27, 1967, the defendant Ambrogio was appointed to the office of deputy police chief by the mayor. Two days later, Drumm was appointed to the same office by the police commission. Ambrogio claims that the power to make such an appointment was vested in the mayor and not in the police commission so that he, not Drumm, was legally appointed to the office. We agree. Section 5-3 of the town charter delineates the scope of the mayor's power of appointment and states, inter alia,

[6] It should be noted that while the publication and filing provisions of General Statutes § 7-412 were not complied with until January 16, 1968, the effective date of the revised regulations was February 7, 1968.

that "[t]he mayor shall appoint all department heads and other officers and employees of the town except as otherwise provided in this charter." Starting with the basic premise that, "except as otherwise provided," the mayor has the power to appoint the deputy police chief, we look to see whether any other charter provision supersedes the mayor's appointive powers. In § 10-3, which outlines the police commission's powers, it is stated that they "shall be empowered to select personnel for appointment or promotion . . . from the top three (3) candidates on any applicable civil service eligibility list." In gleaning the intent of the legislature from the language used in both sections, we hold that § 10-3 does not place a limitation on the appointive powers of the mayor. The legislative intent is clear in empowering the police commission to appoint individuals only to positions classified within the civil service system. Since we have spent the better portion of this opinion concluding that the office involved in the case at bar was not within the classified service on December 27 or 29, the police commission's attempt to appoint Drumm to the office was ineffective. The power of appointment resting in the office of the mayor on the dates in question, the defendant Ambrogio was lawfully appointed to the office of deputy police chief, and the court erred in holding otherwise.

There being nothing in the record to indicate that the town continued to maintain the office of deputy police chief after February 7, 1968, the effective date of the revised regulations, or to indicate that the police commission attempted to appoint a deputy pursuant to the merit system, the question of Ambrogio's right to hold the office after the commission revised its rules is not before us.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendant John Ambrogio.

In this opinion the other judges concurred.