JOHN G. AKIN ET AL. *v.* CITY OF NORWALK ET AL.

HOUSE, C. J., RYAN, SHAPIRO, LOISELLE and FITZGERALD, JS.

Argued February 1—decided May 11, 1972

*John S. Barton,* with whom was *Grove W. Stoddard,* for the appellants (named plaintiff et al.).

*Stanley P. Atwood,* for the appellant (plaintiff town of Westport).

*Melvin J. Silverman,* with whom, on the brief, was *George J. Lepofsky,* for the appellee (defendant Flower Estates of Cranbury, Inc.); also on the brief was *Leonard S. Herman,* corporation counsel, for the appellee (named defendant).

HOUSE, C. J. The plaintiffs have appealed from a judgment of the Court of Common Pleas dismissing their appeal from the action of the defendant town council of the city of Norwalk approving a subdivision plan for a tract of unimproved land. The plaintiffs are individual landowners in the immediate vicinity of the proposed subdivision, the Norwalk-Westport Cranbury Association, Inc., a Connecticut nonstock corporation whose members include property owners in Norwalk and Westport, and the town of Westport. The defendants are the city of Norwalk, its common council, and Flower Estates of Cranbury, Inc., a Connecticut corporation.

On September 6, 1968, the defendant Flower Estates of Cranbury, Inc., hereinafter referred to as

Flower Estates, submitted to the planning commission of Norwalk an application for approval of a preliminary subdivision plan. The land in question is unimproved and consists of approximately thirty acres. It is located entirely in Norwalk and is contiguous to the town of Westport. On the east the tract bounds on Cranbury Road, a highway between the city of Norwalk and the town of Westport. It is bounded on the north by Partrick Avenue, on the west by Wolfpit Avenue and on the south by privately owned property. On May 7, 1969, the planning commission approved the subdivision plan and referred it to the defendant common council which, acting in its capacity as the final planning authority of the city of Norwalk, unanimously approved the subdivision on May 14, 1969. Thereafter, the plaintiffs appealed to the Court of Common Pleas which tried the case on the record, allowing testimony only on the question of aggrievement. The trial court made a finding of facts, concluded that the plaintiffs were aggrieved persons and rendered judgment on October 30, 1970, dismissing the appeal. From this judgment the plaintiffs have appealed to this court.

The first issue confronting us is aggrievement. As noted above, the trial court received evidence with respect to the issue of aggrievement and from that evidence concluded that the plaintiffs were in fact aggrieved and, therefore, entitled to appeal. The defendants contend that the court erred in so holding and that as a result this court is without the requisite jurisdiction to hear the appeal.

In general, this court will not entertain issues raised by an appellee unless the appellee has filed an assignment of errors and a cross appeal. Practice Book § 607; *Rizzo* v. *Price,* 162 Conn. 504, 512,

294 A.2d 541; *DiSesa* v. *Hickey*, 160 Conn. 250, 262, 278 A.2d 785; *Peterson* v. *Norwalk*, 150 Conn. 366, 382, 190 A.2d 33. As stated in *DiSesa* v. *Hickey*, supra, 263: "Practice Book § 619 requires the trial court to set forth in its finding such facts as may be 'necessary to present the questions which the appellant desires reviewed.' The court is not expected, much less required, to speculate as to what issues the appellees might also wish to have reviewed incident to the appellant's appeal. Practice Book § 623 permitting the assignment of errors by an appellee is limited to assignments 'directed to the finding of any fact or refusal to find any fact.' The assignment of error by the appellees here is directed not to a finding of fact but to a conclusion of law. . . . [A]n appellant in such circumstances is not adequately protected by the right to file a reply brief since the finding is designed to present to this court the facts necessary to test the issues raised by the appeal as taken and an appellant in submitting his draft finding cannot be expected to incorporate in that draft finding facts adequate to test the unknown claims of an appellee. Nor would the appellant in preparing his assignment of errors have the opportunity to contest any improper findings relating to the appellee's then undisclosed claims of error." While proper appellate procedure has not been followed by the defendant-appellees, an analysis of the record reveals that there is no merit to the claim even if it had been properly presented, there being ample evidence before the court on which it could justifiably conclude that the plaintiffs were indeed aggrieved parties and entitled to appeal the common council's decision.

While the plaintiffs have assigned several errors, the error which we find to be dispositive of the ap-

peal concerns notice. The plaintiffs contend that the action of the common council in approving the subdivision plan is invalid since notice of the decision was not published pursuant to § 8-28 of the General Statutes requiring that "[n]otice of all official actions of a planning commission shall be published . . . within ten days after such action has been taken." On May 14, 1969, the common council approved the subdivision plan but did not publish notice of its action until August 14, 1969, well beyond the ten-day period prescribed by § 8-28. In the intervening time, the plaintiffs, on May 28, appealed from the action taken by the council on May 14, an appeal which the lower court determined was timely.[1] The determination of whether the failure to publish the decision within ten days of the decision invalidates the action of the council depends on whether the requirement is categorized as directory, as the court implied, or, as the plaintiffs contend, mandatory. " 'It is of course difficult to lay down a general rule to determine in all cases when the provisions of a statute are merely directory and when mandatory or imperative, but, of all the rules mentioned, the test most satisfactory and conclusive is, whether the prescribed mode of action is of the essence of the thing to be accomplished, or in other words, whether it relates to matter, material or immaterial—to matter of convenience or of substance.' . . . In the determination . . . as to whether or not a provision . . . is of the essence of the thing to be accomplished . . . significance is to be attached to the nature of the act . . . the language and form in

---

[1] It is noted that had the commission published its notice on any day between its decision and ten days thereafter, the plaintiffs' appeal on May 28 would have been within the fifteen-day appeal period prescribed by law. General Statutes § 8-28.

which the provision is couched." *Spencer's Appeal,*
78 Conn. 301, 303, 61 A. 1010; see *State ex rel.
Barnard* v. *Ambrogio,* 162 Conn. 491, 501, 294 A.2d
529; *Walker* v. *Jankura,* 162 Conn. 482, 488, 294
A.2d 536; *Broadriver, Inc.* v. *Stamford,* 158 Conn.
522, 529, 265 A.2d 75; *International Brotherhood of
Teamsters* v. *Shapiro,* 138 Conn. 57, 68, 82 A.2d 345.
While we have not had occasion to pass on this issue
under § 8-28, a careful application of these prin-
ciples requires a conclusion that the publication pro-
vision is mandatory.

The obvious purpose of § 8-28, requiring the pub-
lication in a newspaper of the decision of a commis-
sion, is twofold: (1) To give notice to interested
parties of the decision, and (2) to commence the
start of the fifteen-day appeal period.[2] "It is the
obvious purpose of § 8-28 to afford a right of appeal
to a party aggrieved by the action of a planning
commission. The right of appeal, if it is to have any
value, must necessarily contemplate that the person
who was to exercise the right be given the oppor-
tunity of knowing that there is a decision to appeal
from and of forming an opinion as to whether that
decision presents an appealable issue." *Hubbard*
v. *Planning Commission,* 151 Conn. 269, 271–72, 196
A.2d 760.

A statute which requires notice of a decision of a
commission to be published so that aggrieved per-
sons may determine whether they should appeal,
and which, in fact, authorizes a fifteen-day appeal
period to commence from the date of publication

[2] It is important to note that § 8-28 authorizes the appeal from a commission's decision in a period of time to be determined with reference to the publication date and not with reference to the date of decision. "[A]ny person aggrieved . . . may appeal . . . within fifteen days *from the date when notice of such decision was published* in a newspaper." (Emphasis supplied.)

74

goes to the essence of the thing to be accomplished. Failure to publish notice of a decision would prevent the appeal period from running, thereby causing unwarranted and undesirable delay, results which we do not find the legislature could reasonably have intended. "[A] statute such as § 8-28 fixing a rather brief time within which an appeal may be taken to the courts is designed not only to afford protection to an aggrieved person but also to secure, in the public interest, a speedy determination of the issues involved. . . . It would therefore be unreasonable to give to § 8-28 a meaning which would open the appeal process to delays flowing from any of the many factors which could cause a notice, seasonably given, to be long delayed in reaching the prospective appellant." *Hubbard* v. *Planning Commission,* supra, 272. Further, § 8-28 states that the commission "shall," not "may," publish notice of its actions within ten days. The word "shall" connotes that the performance of this obligation is mandatory, as opposed to permissive. See *State ex rel. Barnard* v. *Ambrogio,* supra; *Blake* v. *Meyer,* 145 Conn. 612, 616, 145 A.2d 584.

Viewed in the light of these principles, we find the requirement of publication to be a matter of substance and of the essence of the thing to be accomplished, not a matter of mere procedure or convenience. Having failed to comply with this mandatory requirement within the allotted ten-day period, we hold the council's decision to be null and void.

The defendants would have us avoid the above conclusion on the ground that the council cured any defect by the subsequent reapproval of its May 14, 1969, decision. As mentioned previously, following the decision of May 14, the council failed to publish notice of it in compliance with § 8-28. On August 12,

for the sole express purpose of curing the defect, the council met and reapproved its May 14 decision pro forma. Within ten days thereafter, on August 14, proper legal notice of both the May 14 and August 12 decisions was published. At the August 12 meeting, the merits of the original application and decision were not reconsidered, nor does the record indicate that notice that the hearing was to take place was published.

Concerning the pro forma reapproval, the trial court stated: "The court further finds that the reapproval on August 12, 1969, and the subsequent publication of notice on August 14, 1969, adds nothing which can in any manner affect the first approval by the Common Council on May 14, 1969. The publication of notice of its action on August 14, 1969, does not suffice as a substitute for the notice required to be published within the limited time after the first action taken by the Common Council. The limitation makes the reason for this conclusion obvious for the reasons indicated and for the further reason that reapproval was not reached on the merits but merely to provide an opportunity for publication within a ten day period of the decision of the Common Council. . . . [N]o further consideration need be given on appeal relating to any action taken by the Council on August 12, 1969. The court considers such action invalid for any purpose." We agree. To hold otherwise would indeed circumvent the legislative intent as expressed within § 8-28 of the General Statutes and restore the very evils that statute attempts to eliminate.

There is error, the judgment is set aside and the case is remanded with direction to sustain the appeal.

In this opinion the other judges concurred.