[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this case, plaintiffs RBF Associates, LLC ("RBF") and SRC Construction, Inc. ("SRC") appeal a decision of the defendant, the Torrington Planning and Zoning Commission ("Commission"), to revoke the earlier approval of a two-phase 43-lot cluster subdivision known as Pondside, located on the north side of Highland Avenue in Torrington. RBF is the owner of the property which is the subject of the subdivision approval. SRC is the developer of the subdivision and has an option to purchase the property. The following facts are undisputed and fully reflected in the record.
The Pondside subdivision was first approved by the defendant Commission on April 20, 1988, with a scheduled expiration date of April 20, 1995. On June 10, 1992, however, the Commission found that Pondside was in violation of the subdivision approval because the letter of credit posted as a performance bond was no longer valid. For that reason, it advised the former owner of Pondside that no zoning permits or certificates of occupancy would issue until a valid performance bond was posted with the City.
On August 3, 1994, the president of plaintiff SRC applied for a two-year extension of the existing subdivision approval, proposing that the extension be granted subject to several conditions. At the August 10, 1994 hearing on the extension application, SRC advised the Commission that it would not consent to conditions with stricter completion dates than those proposed in the application for an extension because the time frame for acquiring Pondside, which was then under foreclosure by the Federal Deposit Insurance Corporation ["FDIC"], was beyond its control. The City Planner then advised the Commission of the City's concerns that the new roads for the subdivision did not have a top coat of pavement, the drainage improvements for the CT Page 392 first phase were not completed, and there remained a sight-line problem on the property. The Commission thereupon passed a motion granting an extension of the subdivision approval, with certain conditions, until September 1, 1995, further specifying that if all those conditions were satisfied, a further extension until September 1, 1996 would automatically go into effect. As described in the post-hearing letter from the chairman of the Commission to SRC's counsel, notifying SRC of the Commission's action, the conditions to be met before the automatic extension would go into effect were as follows:
 1) A performance bond, in an amount acceptable to the City Engineer, [must] be provided for Phase 1 prior to any work being done on Phase 1.
 2) The existing roads [must] be repaired and a final coat [must be] applied.
 3) The storm water drainage system for those [must] be completed.
 4) The sight line problem at the Birney Brook — Highland Avenue intersection [must] be fixed.
Return of Record ("ROR"), Item 5 (8/12/94 Letter from Commission Chairman to SRC Counsel).
On August 25, 1994, plaintiff RBF acquired Pondside. Thereafter, SRC, the developer of Pondside, entered into an agreement with RBF to purchase the property.
On August 31, 1995, one day before the subdivision approval then in effect was due to expire unless the conditions specified in the August 10, 1994 extension had been satisfied, the Commission held a special meeting to discuss SRC's request for an additional extension of time to post the performance bond and complete the work required within Phase I of the subdivision. The Commission responded to SRC's request by
 grant[ing] an extension of the Pondside subdivision approval to September 1, 1996 with the following conditions: CT Page 393
 a. the performance bond be posted with the City on or before October 1, 1995; and
 b. the work required within Phase 1 be completed on or before November 1, 1995.
ROR, Item 9 (9/1/95 letter from City Planner to SRC).
On September 27, 1995, SRC made a third request for an extension to meet the conditions specified in the subdivision approval. This time it claimed that it was having difficulty obtaining both the necessary performance bond and the funding to upgrade Pondside's condition. On October 11, 1995, the Commission granted SRC's request as follows:
 [R]equest for extension [i]s granted until July 1, 1996 with the following conditions:
 1. A performance bond in an amount acceptable to the City Engineer be provided for the work to done in Phase I. This bond must be posted with the City by October 13, 1995.
 2. Birney Brook and Adams Drive be repaired by November 15, 1995.
 3. The final coat of bituminous be applied to Birney Brook and Adams Drive by July 1, 1996.
 4. The storm water drainage system for Phase 1 be completed by July 1, 1996.
 5. The sight line problem at the Birney Brook — Highland Avenue intersection be fixed by July 1, 1996.
 6. No zoning permits or certificates will be issued until conditions 1 through 5 are fulfilled.
 7. Upon completion of conditions 1 through 5, the subdivision's expiration date will be September 30, 1997. CT Page 394
ROR, Item 14 (10/12/95 Letter from City Planner to SRC).
On October 12, 1995, SRC provided the Commission with the required performance bond for the subdivision. On November 15, 1995, however, the City Planner wrote to the Commission to report that the plaintiffs had not, by that date, done the road work called for under the second numbered condition of the October 11, 1995 extension, and on that basis to make the following recommendations: first, that the extension be "revoke[d];" second, that the Commission authorize him to file a notice of revocation on the City's land records; and third, that the performance bond be used to complete the work. ROR, Item 16 (11/15/95 Letter from City Planner to the Commission). Without giving notice to the plaintiffs of their intent to do so, the Commission took up the report and recommendations of the City Planner at their regularly scheduled November 22, 1995 meeting. There, on the basis of the City Planner's report, the Commission voted to revoke the subdivision approval for Phase 2 and to call the bond to complete the work remaining to be done on Phase 1. The Commission did not publish legal notice of its revocation of the subdivision approval at any time. Answer, ¶ 33.
On December 13, 1995, at a regularly scheduled meeting of the Commission, SRC appeared through counsel to request that the November 22, 1995 revocation of the subdivision approval for Pondside be reopened and reconsidered. In support of this request, SRC advised the Commission that it had never received notice from the Commission or its staff that the road work was not done to their satisfaction. It also agreed to make its best efforts to do all additional work required of it before the Commission's next regularly scheduled meeting on December 27, 1995. The Commission responded to SRC's request by making, then tabling to December 27, a "motion to rescind the revocation." On December 27, despite a favorable report from the City Engineer that SRC had done its best, in subfreezing temperatures, to do the necessary road work, and in fact had improved the pre-existing problems in the area, the Commission voted not to rescind its prior revocation of the subdivision approval. Thereafter, the Commission failed once again to publish legal notice of its decision. Answer, ¶ 33.
The plaintiffs, RBF and SRC, advance three principal arguments in support of their appeal: first, that the Commission deprived them of their property without due process of law by failing to give them notice of its intention to consider CT Page 395 revocation of the subdivision approval and failing to afford them a meaningful opportunity to present a case in opposition to the proposed revocation; Plaintiffs' Memorandum of Law in Support of Appeal, May 6, 1996, p. 1; second, that the Commission's decision to revoke the subdivision approval was arbitrary, illegal, capricious, and in a abuse of its discretion; id., p. 15; and third, that the Commission's failure to publish legal notice of its revocation decision was in violation of General Statutes § 8-28, thus rendering the underlying revocation decision null and void. For the following reasons, the Court concludes that the plaintiffs' third argument is dispositive of this appeal.
 I
This Court's jurisdiction over appeals from the decisions of local planning and zoning commissions arises under Sections 8-8
and 8-9 of the Connecticut General Statutes. Section 8-8 (b) provides in part that: "[A]ny person aggrieved by any decision of [a municipal land use] board may take an appeal to the superior court for the judicial district in which the municipality is located[.]" Id. General Statutes § 8-9, in turn, provides that "[a]ppeals from . . . planning and zoning commissions may be taken to the superior court . . . in the manner provided in section 8-8." Id.
Pleading and proof of aggrievement are essential to establish subject-matter jurisdiction over an administrative appeal. ParkCity Hospital v. Commission on Hospitals and Health Care,210 Conn. 697, 702 (1989). "[I]n order to have standing to bring an administrative appeal, a person must be aggrieved." (Citations omitted.) Office of Consumer Counsel v. DPUC, 234 Conn. 624, 637
(1995). Aggrievement is a jurisdictional fact, and the parties cannot confer subject matter jurisdiction on the court by agreement. Hughes v. Town Planning and Zoning Commission of Townof North Haven, 156 Conn. 505, 509 (1968). The parties can stipulate to facts which allow the court to make a finding of aggrievement. Nader v. Altermatt, 166 Conn. 43, 64 (1974).
In order to satisfy standing requirements, a person must be either statutorily or classically aggrieved. Honan v. Greene,37 Conn. App. 137, 144 (1995). The requirements of statutory aggrievement are found in General Statutes § 8-8 (a) (1).[1] "Proof of classical aggrievement requires compliance with a two-part test: first, the party claiming aggrievement must CT Page 396 successfully demonstrate a specific, personal and legal interest, as distinguished from a general interest, such as is the concern of all members of the community as a whole; second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision." R. Fuller, Connecticut Practice-Practice Book Annotated, Land Use Law and Practice, Vol. 9 (1993) § 32.5, p. 534. See also Smith v. Planning Zoning Board, 203 Conn. 317, 321 (1987).
Plaintiff RBF, as the sole owner of the premises which are the subject of the subdivision approval, is aggrieved by the decision of the Commission revoking such approval, and thus has standing to bring this appeal. The owner of the property which forms the subject matter of the application to the agency is always aggrieved. See Winchester Woods Associates v. Planning andZoning Commission of Town of Madison, 219 Conn. 303, 308 (1991);Huck v. Inland Wetlands and Watercourses Agency of Town ofGreenwich, 203 Conn. 525, 530 (1987).
Plaintiff SRC is also aggrieved by the decision of the Commission since it has an option to purchase the subject premises and is the developer of the subdivision. The Appellate Court has recognized that "[t]he plaintiff's option rights [with respect to the subject property], viewed without regard to their interruption and eventual termination, gave him an interest in the [property] sufficient to demonstrate a specific, personal and legal interest in the commission's decision, and to demonstrate that his interest was specially and injuriously affected by that decision." (Citations omitted.) Goldfeld v. Planning ZoningCommission, 3 Conn. App. 172, 176 (1985); see also Pollio v.Conservation Commission of the Town of Somers, 32 Conn. App. 109,115 (1993) (where an option to purchase the property involved in the appeal expired by the time of trial, the appellant was not aggrieved); Mason v. Zoning Board of Appeals, Superior Court, judicial district of New Haven at New Haven, Docket No. 373276 (December 14, 1995, Booth, J.) (lease with an option to buy is sufficient to establish aggrievement). Accordingly, both plaintiffs have standing to bring this appeal.
 II
The plaintiff here argues that even if the Commission's November 22, 1995 decision to revoke the subdivision approval for Pondside was entirely lawful, that decision was rendered null and CT Page 397 void when the Commission failed to publish notice of it within fifteen days thereafter, as required by General Statutes §8-28. Section 8-28 provides that
 Notice of all official actions or decisions of a planning commission, not limited to those relating to the approval or denial of subdivision plans, shall be published in a newspaper having a substantial circulation in the municipality within fifteen days after such action or decision. Any appeal from an action or decision of a planning commission shall be taken pursuant to the provisions of section 8-8.
Though on its face, this statute applies only to appeals from municipal planning commissions, it applies with equal force to combined municipal planning and zoning commissions, which any town, city or borough may create under General Statutes §8-4a to have and exercise "all the powers and duties of both a planning commission and a zoning commission[.]" The defendant Commission, as a combined municipal planning and zoning commission created under Section 8-4a, is thus under a duty, imposed by Section 8-28, to publish timely, proper notice of each of its "official acts or decisions" taken or reached in the exercise of its statutory powers as a planning commission. Here, claims the plaintiff, the Commission's failure to publish notice of its decision to revoke the subdivision approval for Pondside was in clear violation of its statutory duty.
Section 8-28 prescribes no penalties or sanctions for non-compliance with the publication requirement set forth therein. Even so, in light of the statute's evident purposes, our Supreme Court has long held that the failure to publish timely, proper notice of any official action or decision to which the statute applies necessarily renders that action or decision null and void. Akin v. Norwalk, 163 Conn. 68, 73
(1972). See R. Fuller, Connecticut Practice-Practice Book Annotated, Land Use Law and Practice, Vol. 9 (1993) § 24.4, p. 446.
The Akin Court began its analysis by observing that under the then-existing version of Section 8-28, "any person aggrieved" by a decision of a municipal land use board could appeal from such decision "`within fifteen days from the date when notice of suchCT Page 398decision was published in a newspaper.'" Id., 73 n. 2, quoting Section 8-28. [Emphasis added.] Under that statute, observed the Court, "[i]t is important to note that . . . [the period of time to appeal is] to be determined with reference to the publication date and not with reference to the date of decision." Id.
Therefore, noted the Court, the
 obvious purpose of § 8-28, requiring the publication in a newspaper of the decision of the commission, is twofold: (1) To give notice to interested parties of the decision, and (2) to commence the start of the fifteen-day appeal period.
Id.
As for the notice-giving purpose of the statute, the Court observed as follows: that the publication requirement serves that purpose by promoting the right to a meaningful, informed appeal.
 The right of appeal, if it is to have any value, must necessarily contemplate that the person who was to exercise the right be given the opportunity of knowing that there is a decision to appeal from and of forming an opinion as to whether that decision presents an appealable issue." Hubbard v. Planning Commission, 151 Conn. 269, 271-72, 196 A.2d 760 [(1963)].
Akin, supra, 73. So stating, the Court concluded that the statutory requirement of publication
 so that aggrieved persons may determine whether they should appeal, and which, in fact, authorizes a fifteen-day appeal period to commence from the date of publication, goes to the essence of the thing to be accomplished.
Id., 74.
In further support of the foregoing conclusion, the Court then listed several reasons why the second purpose of the statute's publication requirement — to start the running of the CT Page 399 statutory appeal period — was no less important than the first. The failure to publish notice, reasoned the Court, would obviously prevent the appeal period from running at all,
 thereby causing unwarranted and unreasonable delay, results which we do not find the legislature could reasonably have intended. "[A] statute such as § 8-28 fixing a rather brief time within which an appeal may be taken to the courts is designed not only to afford protection to an aggrieved person but also to secure, in the public interest, a speedy determination of the issues involved. It would therefore be unreasonable to give § 8-28 a meaning which would open the appeal process to delays flowing from any of the many factors which could cause a notice, seasonably given, to be long delayed in reaching the prospective applicant." Hubbard v. Planning Commission, supra, 272. Further, § 8-28 states that the commission "shall," not "may," publish notice of its actions within ten days. The word "shall" connotes that the performance of this obligation is mandatory, as opposed to permissive. See State ex rel. Barnard v. Ambrogio, [162 Conn. 491, 501, 294 A.2d 529
(1972)]; Blake v. Meyer, 145 Conn. 612, 616, 145 A.2d 584 [(1958)].
Akin, supra, 74. On the basis of these observations and points of analysis, the Court restated its conclusion that the publication requirement of Section 8-28 is "a matter of substance and of the essence of the thing to be accomplished, not a matter of mere procedure or convenience." Id. It therefore held that in the case before it, through the plaintiff had received notice of the appealed-from decision, the defendant municipal planning agency's failure to publish timely notice of that decision rendered the decision "null and void." Id.
Though the provisions of Section 8-28, as they existed whenAkin was decided, have since been shifted to and recodified in other statutes, the essential rules established by those provisions remain in effect to this day. Thus, as previously noted, the requirement of publication of notice is still set forth in Section 8-28, though the period for so doing has been CT Page 400 extended from ten to fifteen days after the action or decision. Furthermore, the statutory period within which an appeal from any such action or decision may be taken, though now listed in Section 8-8 (b) rather than Section 8-28, is still limited to "fifteen days from the date that notice of the decision was published[.]" General Statutes § 8-8 (d). Because these statutory changes are immaterial, the rule of Akin remains good law to this day. See, e.g., Cardoza v. zoning Commission,211 Conn. 78, 81 (1989) (observing, under the authority of Akin andHyatt v. Zoning Commission, 163 Conn. 379, 386-87 (1972) (applying the Akin rule to appeals from decisions by zoning boards of appeals), that it is "not in dispute" that "[f]ailure to publish a notice of decision within the applicable time constraints [imposed by law] renders the decision . . . void.")
In this case, claims the plaintiff, the Commission's decision to revoke the subdivision approval for Pondside was an "official action or decision of a planning commission," within the meaning of Section 8-28, and thus a decision as to which notice by publication" within fifteen days after the decision was required. Its admitted failure to do so, argues the plaintiff, necessarily rendered that decision null and void under Akin and its progeny.
The defendant Commission does not dispute the continuing validity of the Akin rule with respect to official acts or decisions of a planning commission as to which timely, proper notice is not published, as required by Section 8-28. Instead, it argues that that rule cannot be invoked in this case because here, the decision appealed from was not an "official action or decision of a planning commission," to which appellate rights attached or the publication requirement applied. In particular, the defendant now asserts that its November 22, 1995 "revocation" of the subdivision approval for Pondside was not really a revocation, but simply a formal acknowledgment that the approval then in place, as extended on October 11, 1995, had automatically expired on November 15, 1995. That acknowledgment, claims the defendant, was put in the form of a motion officially authorizing the placement of notice of such automatic expiration on the City's land records, as was required to make it effective under General Statutes § 8-26c(c).[2] See generally, R. Fuller, Connecticut Practice — Practice Book Annotated, Land Use Law and Practice, Vol. 9 (1993) § 50.2, p. 822 (agreeing that under Section 8-26c(c), originally codified as Section 8-26c(b), a subdivision approval does not automatically expire until the CT Page 401 planning commission files a notice thereof in the town land records and places a statement to that effect on the subdivision map in the town clerk's office).
The question presented by the defendant's argument is an interesting one: whether or not the giving of authorization to file notice of the automatic expiration of a subdivision approval is an appealable "official action or decision" as to which notice must be published in a newspaper under Section 8-28. For the following reasons, however, that question need not be answered in this case.
The defendant's protests to the contrary notwithstanding, its action on November 22, 1995 was indeed a revocation of the subdivision approval for Pondside, not a mere acknowledgment of the automatic expiration of that approval. First, the Commission itself repeatedly described its action as a "revocation," so denominating it in the minutes of its meeting on November 22, 1995; ROR, Item 17 (11/22/95 Commission Minutes), p. 3;[3] in the City Planner's two letters on behalf of the Commission informing plaintiff RBF of the "Pondside Subdivision-Revocation of Approval;" ROR, Items 19 (11/27/95 Letter from City Planner to RBF)[4] and 20 (11/28/95 Letter from City Planner to RBF);[5]
and in minutes of the December 13 and December 27, 1995 meetings of the Commission, where the "motion to reconsider the revocation" was made, discussed and defeated. ROR, Item 22 (12/13/95 Commission Minutes), pp. 9-11,[6] and Item 26 (12/17/95 Commission Minutes), pp. 7-14.[7]
Secondly, and of greater importance, the subdivision approval in question could not have automatically expired in November of 1995, with or without the formal acknowledgment of the defendant Commission, for its operative expiration date throughout that month was July 1, 1996. Examining the language of the approval, as modified in the October 11, 1995 extension, one finds that SRC' s "request for extension was granted until July 1, 1996," ROR, Item 14 (10/12/95 Letter from City Planner to SRC), p. 1, (emphasis added), upon the following conditions:
 1. A performance bond in an amount acceptable to the City Engineer be provided for the work to be done in Phase I. This bond must be posted with the City by October 13, 1995.
2. Birney Brook and Adams Drive be repaired by CT Page 402 November 15, 1995.
 3. The final coat of bituminous be applied to Birney Brook and Adams Drive by July 1, 1996.
 4. The storm water drainage system for Phase 1 be completed by July 1, 1996.
 5. The sight line problem at the Birney Brook — Highland Avenue intersection be fixed by July 1, 1996.
 6. No zoning permits or certificates will be issued until conditions 1 through 5 are fulfilled.
 7. Upon completion of conditions 1 through 5, the subdivision's expiration date will be September 30, 1997.
Id., pp. 1-2. So framed, the October 11 extension granted a single extension of the subdivision approval until July 1, 1996, subject to a single additional extension until September 30, 1997, which would go into effect automatically if and when the first five conditions therein specified "were fulfilled." Id., p. 1. By the terms of the extension itself, the July 1, 1996 expiration date could not be extended until September 30, 1997 if any one of the five numbered conditions was shown to have been violated.
The defendant would have this Court conclude that when the second numbered condition was not fulfilled, in the time and manner specified by the October 11 extension, the existing approval automatically expired, subject only to the placing of notice on the land records and the subdivision map in the town clerk's office, as required by Section 8-26c(c). For that to have been true, however, the Commission's October 11 extension of the approval would have to have been granted only until November 15 or November 22, 1995, subject to a further extension upon completion of the required road work by that date. By failing to set the extension date and the deadline for completing the road work on the same date, the defendant failed to reserve for itself the option of having the approval automatically expire on that date. Its actions on November 22, 1995 thus cannot be rationalized or sustained as a formal acknowledgement of the automatic expiration of a subdivision approval. CT Page 403
Having concluded that the action of the defendant Commission was in fact a revocation of a subdivision approval, the Court must decide if it was an appealable "official acts or decisions of a planning commission" to which because it can be appealed; the statutory publication requirement applies. Our statutes governing local planning and zoning commission make no mention of a power to revoke a subdivision approval, at any time or for any reason. To the contrary, Section 8-26, governing the approval of subdivision plans, expressly states that "[t]he commission shall approve, modify and approve, or disapprove any subdivision . . . within the period of time permitted under Section 8-26d," thereby suggesting that the Commission has no other powers with respect to such applications than those enumerated.
Connecticut courts, reciting the limiting language of Section8-26, have consistently held that town planning commissions or combined town planning and zoning commissions have no powers with respect to subdivisions other than those expressly conferred by law. See, e.g., Carpenter v. Planning and Zoning Commission,176 Conn. 581, 592 (1979) (holding that conditional approvals of subdivision applications are inconsistent with the statutory mandate, and thus unlawful); Moscowitz v. Planning and ZoningCommission, 16 Conn. App. 303 308-09 (1988) (agreeing withCarpenter that any action as to a subdivision application not expressly sanctioned by Section 8-26 "necessarily falls outside the statutory delegation of powers contained in the enabling act and cannot stand.") On the basis of those authorities, one judge of this Court has concluded that since the power to revoke a subdivision approval is not expressly allowed by statute, it is an unlawful, ultra vires act. Paige v. Planning and ZoningCommission of Fairfield, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 289197 (January 14, 1989, Levin, J.).[8]
Since the power to revoke a subdivision approval is not conferred by statute, the right to appeal from such a revocation is not mentioned in the statutes either. There can be no doubt, however, that the decision to revoke a subdivision application is an official, if unauthorized, decision, which, when attempted by a local planning or planning and zoning commission, must be subject to appeal. The decision plainly requires the exercise of judgment and discretion. Its effects, moreover, are at least as far-reaching as the denial of a subdivision application, which is CT Page 404 explicitly appealable under Section 8-8, for it affects both the applicant and all others who have a financial stake in the further development of the subdivision, either by the owner or developer, in fulfillment of the conditions imposed by the commission, or by the town, upon calling the bond posted to ensure completion of all necessary work. If a subdivision approval were revoked before its automatic expiration date, the interests of all of these parties could be seriously compromised. Any decision by a local planning agency to revoke a subdivision approval is thus an "official action or decision" of the agency as to which a right to appeal must exist, and a right to notice by publication must be extended. The failure to provide such notice in this case constituted a violation of Section 8-28, and rendered the decision of the defendant Commission null and void.
Accordingly the Court hereby sustains the plaintiff's appeal and remands this case to the defendant Commission for further proceedings consistent herewith.
SHELDON, J.